21-2-01239-34
CMP        4
Complaint
10649630

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
07/13/2021 1:46:29 PM
Linda Myhre Enlow
Thurston County Clerk

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THURSTON COUNTY

RW JOHNSON MOTTMAN PLAZA
CONDOMINIUM OWNERS
ASSOCIATION, a Washington nonprofit
corporation,

               Plaintiff,

    v.

QBE INSURANCE GROUP LIMITED, a
foreign corporation; GENERAL CASUALTY
COMPANY OF WISCONSIN, a foreign
corporation,

               Defendants.

NO.   21-2-01239-34

COMPLAINT

Plaintiff RW Johnson Mottman Plaza Condominium Owners Association ("RW

Johnson") alleges for its Complaint as follows:

## I. INTRODUCTION

1.1.    This is an insurance coverage dispute.  RW Johnson submitted a claim for damage

sustained by one of its buildings located at 2620 R.W. Johnson Blvd., Tumwater, WA.  QBE

Insurance Group Limited, on behalf of General Casualty Company of Wisconsin, (collectively,

"QBE" or "Defendants") denied coverage outright.  In doing so, QBE misrepresented the

COMPLAINT - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

applicable policies, misrepresented the applicable policy provisions, and misapplied the findings

of its own investigators.  When RW Johnson identified these errors to QBE, QBE walked back

its denial, claiming it would reopen the investigation for coverage and claiming it had previously

determined there was coverage.  Since then, QBE has still not paid the claim and has refused to

respond to RW Johnson's requests for updates.

1.2.    Accordingly, RW Johnson seeks:

1.2.1.  A declaration of coverage under the Business Owners policies issued by

General Casualty to RW Johnson from 2015–2020.

1.2.2.  Damages for Defendants' breach of its contractual duties to provide

coverage for covered losses.

1.2.3.  Damages for Defendants' statutory, regulatory, and common law bad faith

under Washington law.

1.2.4.  Pre-judgment and post-judgment interest.

1.2.5.  Attorneys' fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d

37, 811 P.2d 673 (1991).

## II. PARTIES

2.1.    Plaintiff RW Johnson is a Washington nonprofit corporation with its principal

place of business in Thurston County, Washington.

2.2.    Defendant QBE Insurance Group Limited is a foreign corporation organized

under Australian law, with its principal place of business in Sydney, Australia.

2.3.    Defendant General Casualty Company of Wisconsin is a foreign corporation,

organized under the laws of the State of Wisconsin, with its principal place of business in Sun

Prairie, Wisconsin.

COMPLAINT - 2

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

2.4.     Defendants do business in Thurston County, Washington.

### III. JURISDICTION AND VENUE

3.1.     This Court has jurisdiction over the subject matter of this action pursuant to RCW 2.08.010 and RCW 7.24.010.

3.2.     This Court has personal jurisdiction over the parties.

3.3.     Venue is proper in this Court under RCW 48.05.220 and RCW 4.12.025.  RW Johnson sustained covered losses in Thurston County, and one or more of the defendants transacts business in Thurston County.

### IV. FACTS

4.1.     RW Johnson is the owners association for a collection of buildings located at and around 2620 R.W. Johnson Blvd., Tumwater, WA.

4.2.     Defendants have provided business owners insurance to RW Johnson for its properties located at and around 2620 R.W. Johnson Blvd., Tumwater, WA since at least 2015.

4.3.     In March 2020, RW Johnson notified Defendants of damage to the siding of one of the insured buildings.  The subject building was constructed in 2008.

4.4.     QBE retained EFI Global to inspect the loss.

4.5.     EFI Global found the damage was "consistent with prolonged moisture exposure."  EFI Global also observed that in one area of the building, "flashing tape had been installed over the side and bottom window flanges.  Flashing installed over the bottom flange would facilitate for moisture to intrude the building envelope."

4.6.     EFI Global concluded the damage was from "moisture intrusion," which "was caused by a flashing construction deficiency at the window openings."

COMPLAINT - 3

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

4.7.     On April 6, 2020, Defendants denied coverage based only on the 2016-17 policy. The denial letter was signed by Julius Lester, Senior Claims Representative, at Defendant QBE. A copy of the denial letter is attached as Exhibit A.

4.8.     Defendants' denial letter characterized EFI Global's investigation as follows:

> The Engineers [sic] inspection revealed moisture intrusion around the second-floor exterior windows on the south elevation.  The Engineer observed long term deterioration and decay beneath the exterior cladding and underlayment around the windows that has now compromised sections of the wood framing with rot. The aforementioned damages and source of the water intrusion is a direct result of improper construction and installation, in conjunction with flashing deficiencies around the windows of the building.

As such, Defendants acknowledged the loss had been on-going for several years while, at the same time, only considered coverage under the 2016-17 policy.

4.9.     In the denial letter, Defendants mis-quoted its own policy.  Defendants quoted as relevant to its denial an exclusion that had been replaced by endorsement.

4.10.    Defendants' denial letter did not explain how any of the quoted policy provisions applied to the conclusions drawn by EFI Global.

4.11.    The entirety of Defendants' coverage position consisted of a single sentence that summarily concluded: "there is no coverage for the damages associated with the improper construction, long term decay and deterioration of the building materials and framing."

4.12.    RW Johnson hired J.A. Morris to investigate and repair the damage to the building's siding.

4.13.    J.A. Morris estimated it would cost $67,550.95 to repair the resulting damage from the water intrusion and rot.  A copy of J.A. Morris' estimate is attached as Exhibit B.

4.14.    RW Johnson has received and paid invoices of $40,831.06 and $26,719.89 for the repairs.  Copies of the invoices are attached as Exhibits C and D.

COMPLAINT - 4

4.15.    On September 17, 2020, counsel for RW Johnson sent a letter to Mr. Lester at

Defendant QBE.  The September 17 letter explained the errors in Defendants' denial and

requested Defendants withdraw the denial, confirm coverage, and pay for the repairs JA Morris

had made.  A copy of that letter is attached as Exhibit E.

4.16.    Also on September 17, 2020, counsel for RW Johnson tendered a copy of the

letter to Mr. Lester to the Washington Insurance Commissioner to satisfy the 20-Day Notice

required under the Insurance Fair Conduct Act.  RCW 48.30.015(8).  A copy of that tender is

included in Exhibit E.

4.17.    On October 7, 2020, Defendants responded to the Washington IFCA Notice.

Kikki Barnes, Claims Supervisor, for QBE signed the letter.  The letter is attached as Exhibit F.

4.18.    In their October 7 letter, Defendants stated they had already determined there was

coverage: "Our letter of April 6, 2020 states that *there is coverage* for improper construction,

long term decay and deterioration of the building materials and interior water damage.  As such

it is our position that there is no IFCA violation *unless there is an unreasonable denial of*

*benefits*." (emphasis added).

4.19.    The October 7 letter wholly ignored RW Johnson's point from the September

letter that more than just the 2016-17 policy was implicated.  Rather, the October 7 letter stated,

"For purposes of this coverage position, the relevant terms of the 2016-2[0]17 policy term are

attached. . . .  No other policies were considered."

4.20.    Defendants' letter further stated they "agree to *re-open the claim* and *investigate*

*the claim for coverage* based on the information provided in the IFCA Notice, including the

position that the Claim is possibly a continuous loss that goes back to the construction of the

insured location in 2008." (emphasis added).

COMPLAINT - 5

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

4.21.   Despite promising to "re-open the claim" and "investigate the claim for coverage," Defendants conducted no further investigation.

4.22.   Despite attempts by RW Johnson to obtain updates, Defendants declined to communicate about its promised "re-opening" and "investigation" for more than three months.

4.23.   Finally, on January 19, 2021, RW Johnson wrote another letter to Defendants, this one addressed to Ms. Barnes.  The January 19 letter itemized several of Defendants' coverage oversights and plain bad faith.  The letter requested an update on Defendants' "investigation and payment of the claim."  A copy of the January 19 letter is attached as Exhibit G.

4.24.   The next day, on January 20, 2021, Defendants, via Ms. Barnes, sent RW Johnson's counsel an email indicating Defendants would pay on the claim and asking, "Can you confirm if there are any additional expenses since the [IFCA] complaint was filed.  If so please forward- Thank you."

4.25.   RW Johnson responded via email on January 26, 2021, confirming no other repair expenses had been incurred, and asked for a response from Defendants regarding coverage and payment.

4.26.   Defendants never responded.

4.27.   On March 1, 2021, RW Johnson again contacted Defendants, via email to Ms. Barnes, asking for an update.

4.28.   Defendants never responded.

4.29.   As of the date of this filing, Defendants have not paid on the claim they acknowledged was covered, have not provided any update on the "re-opened" claim, nor provided any update on the "investigation" of that claim.

COMPLAINT - 6

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

## V.  FIRST CLAIM: DECLARATORY JUDGMENT

5.1.     **Incorporation by Reference.**  RW Johnson realleges the allegations set forth above.

5.2.     **Duty to pay.**  Under the policies issued by Defendants, Defendants undertook to pay RW Johnson for direct physical loss of or damage to insured property occurring during the policy term.

5.3.     **Breach of Duties under the Policies.**  Defendants have breached their duty to pay by failing to fully reimburse RW Johnson for its covered losses.

5.4.     **Actual Controversy.**  An actual controversy of a justiciable nature presently exists between RW Johnson and Defendants regarding the proper construction and coverages of the policies and the rights and obligations of the parties with respect to this claim.  Issuance of declaratory relief by this Court will terminate the existing and any related future controversies between the parties.

5.5.     **Relief Sought.**  RW Johnson asks the Court to declare that RW Johnson's claim is covered under each of the policies issued by Defendants from at least 2015–2020.

## VI.  SECOND CLAIM: BREACH OF CONTRACT

6.1.     **Incorporation by Reference.**  RW Johnson realleges the allegations set forth above.

6.2.     **Breach of Contract.**  Defendants have failed and refused to provide the bargained-for coverage under each of the policies issued by Defendants from at least 2015–2020.

6.3.     **Damages.**  As a direct and proximate result of the breaches of these insurance contracts, RW Johnson has been deprived of the benefits of its insurance coverage.

COMPLAINT - 7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

6.4.     **Additional Damages.**  As another direct and proximate result of Defendants' breach, RW Johnson has been forced to incur attorney's fees and other expenses in order to prosecute this action.

## VII.  THIRD CLAIM:  INSURANCE BAD FAITH

7.1.     **Incorporation by Reference.**  RW Johnson realleges the allegations set forth above.

7.2.     **Duty of Good Faith and Fair Dealing**.  Defendants owed RW Johnson a duty of good faith and fair dealing.  Pursuant to that duty, Defendants are obliged to refrain from denying coverage based on unreasonable, frivolous, dilatory, or unfounded interpretations of the insurance policies.  Defendants are likewise required to deal fairly with RW Johnson and give equal consideration to (and not put their own interests ahead of) RW Johnson's financial interests.

7.3.     **Defendants Acted in Bad Faith**.  Defendants breached their duty of good faith and fair dealing as described in this Complaint.

## VIII.  FOURTH CLAIM:  VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86

8.1.     **Incorporation by Reference.**  RW Johnson realleges the allegations set forth above.

8.2.     **Violations of the Unfair Claims Settlement Practices Act.**  Washington has adopted the Unfair Claims Settlement Practices Act under Chapter 284-30, *et seq.* of the WAC. Defendants violated the Unfair Claims Settlement Practices Act, including WAC 284-30-330(1), (2), (3), (4), (5), (6), (7), and (13), WAC 284-30-350, WAC 284-30-370, and WAC 284-30-380, by failing to provide a reasonable basis for its denial, by misrepresenting pertinent provisions of

COMPLAINT - 8

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

the applicable policies in relation to RW Johnson's losses, by refusing to pay on a claim when

coverage had been determined to exist, by refusing to conduct a reasonable and timely

investigation, and by refusing to respond to pertinent communications from the insured.

8.3.     **Violations of WCPA.**  Violations of these WAC provisions are *per se* violations

of the WCPA, RCW 19.86, entitling RW Johnson to exemplary damages, attorney fees, and

costs.  Defendants' unreasonable denial of coverage likewise is a violation of the WCPA.

8.4.     **Damages.**  As a direct and proximate cause of this conduct, RW Johnson suffered

damages in an amount to be proven at trial.

**IX.  FIFTH CLAIM: VIOLATION OF THE INSURANCE FAIR CONDUCT ACT**

9.1.     **Incorporation by Reference.**  RW Johnson realleges the allegations set forth

above.

9.2.     **IFCA Notice.**  On September 17, 2020, RW Johnson filed a 20-day IFCA

Notification with the Office of the Insurance Commissioner.  This written notice, along with the

bases for RW Johnson's IFCA causes of action, was provided to Defendants on the same day.

On October 7, 2020, Defendants acknowledged receipt of the IFCA Notification, and claimed

that because "***there is coverage*** for improper construction, long term decay and deterioration of

the building materials and interior water damage.  As such it is our position that there is no IFCA

violation ***unless there is an unreasonable denial of benefits***." (emphasis added).  Despite such

concession, Defendants never paid the claim.  Defendants also never conducted the investigation

that was promised in the same letter.

9.3.     **IFCA Violations.**  Defendants have unreasonably declined to pay RW Johnson's

claim, and have violated a multitude of provisions under WAC 284-30 *et seq.*, as described

COMPLAINT - 9

GORDON  
TILDEN  
THOMAS  
CORDELL  
600 University Street  
Suite 2915  
Seattle, WA  98101  
206.467.6477

above. Defendants' actions (and inactions) are violations of IFCA, entitling RW Johnson to actual, compensatory, and multiplied damages, attorneys' fees, and costs.

9.4. **Damages.** As a direct and proximate cause of this conduct, RW Johnson has suffered damages in an amount to be established at trial.

## X. REQUEST FOR RELIEF

10.1. **Declaratory Judgment.** A declaratory judgment in favor of RW Johnson confirming that RW Johnson's claim is covered under each of the policies issued by Defendants from at least 2015–2020.

10.2. **Money Damages.** For money damages, in an amount to be proved at trial, together with pre-judgment and post-judgment interest.

10.3. **Extracontractual Damages.** For extracontractual damages pursuant to RCW 19.86.090, RCW 48.30.015, and Washington caselaw.

10.4. **Attorney's Fees and Costs of Suit.** For reasonable attorney's fees and costs, including, without limitation, actual attorney's fees pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

10.5. **Other Relief.** For such other and further relief as the Court deems just, proper, and equitable.

DATED this 13th day of July, 2021.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Plaintiff

By ___*s/ John D. Cadagan*_____
    Franklin D. Cordell, WSBA #26392
    John D. Cadagan, WSBA #47996
    600 University Street, Suite 2915
    Seattle, Washington 98101
    fcordell@gordontilden.com
    jcadagan@gordontilden.com

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

# EXHIBIT A



P.O. Box 975, Sun Prairie, WI 53590
Phone: 608.837.4440 • Toll Free: 800.362.5448
www.qbe.com/us

April 6, 2020

RW JOHNSON MOTTMAN PLAZA
2620 RW JOHNSON BLVD STE 400,
TUMWATER, WA 98512

**VIA US Mail**

Re:  Claim number:           744216N
     Loss date:              March 1, 2017
     Policy number:          CFB1164992
                             Eff. August 17, 2016 - August 17, 2017
     Insured name:           RW JOHNSON MOTTMAN PLAZA
     Insurance company:      General Casualty Company of Wisconsin

Dear RW JOHNSON MOTTMAN PLAZA,

I am the claims professional writing on behalf of General Casualty Company of Wisconsin ("we", "us", "our"), a member company of QBE North America, which issued Policy No. CFB1164992 to RW JOHNSON MOTTMAN PLAZA for the period August 17, 2016 to August 17, 2017 (the "Policy"). Please direct all future correspondence to my attention. If you are not the appropriate individual to whom this letter should be addressed, please let me know the appropriate individual and I will send this letter to that person instead.

The purpose of this letter is to advise you of our position regarding coverage under the Policy (the "Claim"). We value our customers and appreciate your business. For the reasons explained below, however, we regret to inform you that the Policy does not provide coverage for this Claim.

In considering the request for coverage, we have reviewed the Policy and the information available to us. **The Policy's relevant terms are quoted herein for convenient review.** Kindly refer to the Policy for its complete terms and conditions. To the extent that any of the quoted policy terms or provisions herein differ from the language contained in the Policy, the Policy controls. No other insurance policies were considered. If you assert a right to coverage under another policy issued by us or any other QBE North America company, please submit notice pursuant to the notice provisions contained in that policy.

We expect that you may have questions regarding our position after reading this letter. Please feel free to contact me with any questions you may have.

<u>**RELEVANT FACTUAL BACKGROUND**</u>

The following provides a summary of the information provided to us to date.

The subject property is a commercial building located at 2620 RW Johnson Blvd.,, Tumwater, WA 98512. Upon our receipt of the claim, QBE assigned EFI Global to inspect the building for a moisture intrusion assessment. The Engineer conducted the inspection on March 31, 2020.  At the time of the inspection the building siding was removed by the insured's construction company around various locations of the second floor to address the areas of concern where water intrusion was reported in the interior of the building. The Engineer's inspection revealed moisture intrusion around the second-floor exterior windows

on the south elevation. The Engineer observed long term deterioration and decay beneath the exterior cladding and underlayment around the windows that has now compromised sections of the wood framing with rot. The aforementioned damages and source of the water intrusion is a direct result of improper construction and installation, in conjunction with flashing deficiencies around the windows of the building.

## THE POLICY

GENERAL CASUALTY COMPANY OF WISCONSIN issued CFB1164992 to RW JOHNSON MOTTMAN PLAZA, effective for the policy period 08/17/2016 to 08/17/2017 ("the Policy").

Form number **BP 00 03 01 06** contains these relevant provisions:

**BUSINESSOWNERS**
**BP 00 03 01 06**

## BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** □ Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** □ Property and Paragraph. Liability And Medical Expenses Definitions in Section **II** □ Liability.

## SECTION I □ PROPERTY

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**
Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.
&
**3. Covered Causes Of Loss**
Risks of direct physical loss unless the loss is:
a.        Excluded in Paragraph **B.** Exclusions in Section **I;** or
b.        Limited in Paragraph **4.** Limitations in Section **I.**
&

**4. Limitations**
**a.** We will not pay for loss of or damage to:
&
**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.
&

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. **b.** Limited in Paragraph **4.** Limitations in Section **I.**
&

**2.** We will not pay for loss or damage caused by or resulting from any of the following:
&

**I. Other Types Of Loss**
**(1)** Wear and tear;
**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
**(3)** Smog;
**(4)** Settling, cracking, shrinking or expansion;
...

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
&

**c. Negligent Work**
Faulty, inadequate or defective:
**(1)** Planning, zoning, development, surveying, siting;
**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
**(3)** Materials used in repair, construction, renovation or remodeling; or
**(4)** Maintenance; of part or all of any property on or off the described premises.
& **.**

## COVERAGE POSITION

Based on the information provided to us by the Engineering firm EFI Global, we regret to inform you that there is no coverage for the damages associated with the improper construction, long term decay and deterioration of the building materials and framing behind the siding or the interior water damages observed in the building based on the above referenced policy language.

## CONCLUSION

For the reasons discussed above, the Policy does not provide coverage for the Claim. We therefore deny coverage for this Claim under the Policy.

Our coverage position is based on the information presently available to us. Neither this letter nor our investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by us or any other QBE North America company. We expressly reserve all of our rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted.

Should you have any additional information that you feel would cause us to review our position, we ask that you advise us as soon as possible. If you wish to have your personal attorney become involved in this matter, at your own expense, please feel free to do so and we will cooperate fully with your attorney.

If you have any other insurance policies that may respond to this claim, you should notify that carrier immediately.

In closing, we encourage you to contact us if you have any questions or concerns regarding the contents of this letter. You can reach me at 972-398-8639 or Julius.Lester@us.qbe.com. Thank you for your cooperation in this matter.

Very truly yours,

Julius Lester
Senior Claims Representative
QBE Americas, Inc. (QBEAI)

Direct:  972-398-8639
Fax:      866-251-5389
E-mail: Julius.Lester@us.qbe.com

Enclosures:      EFI Global Report

Please be advised that QBE Americas, Inc. (QBEAI) is a claims administrator for the above listed insurance company and QBEAI is handling the above captioned matter on its behalf.

EXHIBIT B



**J.A. MORRIS**
CONSTRUCTION

## Mottman Plaza Reside Breakout

| | | |
|---|---|---:|
| Permit | $ | 462.01 |
| Dump Fees | $ | 922.30 |
| Supervisor Labor | $ | 2,325.00 |
| Demo Labor | $ | 5,640.00 |
| Siding Labor | $ | 28,440.00 |
| Siding Materials | $ | 8,964.80 |
| Rough Hardware Mat. | $ | 268.99 |
| Water Proofing Mat. | $ | 2,548.40 |
| Finish Carp. Labor | $ | 60.00 |
| Finish Carp. Mat. | $ | 314.35 |
| Drywall Repair | $ | 402.50 |
| Electrical | $ | 1,094.87 |
| Fire Alarm | $ | 557.75 |
| Rental lifts & Toilet | $ | 9,745.78 |
| Sales Tax | $ | 5,804.20 |
| | $ | 67,550.95 |

# EXHIBIT C

J. A. Morris Construction LLC

PO Box 12645
Olympia, WA 98508

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/14/2020 | 1222 |

| Bill To |
|---------|
| Washington Counties Risk Pool<br>Attn: Derek Bryan<br>2620 R.W. Johnson Blvd<br>Tumwater, WA 98512 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Due on receipt | 20-008 |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | RE: ADDRESS ROT AND REPLACEMENT OF SIDING. | | |
| 358.75 | Man hours through May 8th | 60.00 | 21,525.00T |
| | Items below are received and invoiced to JA Morris through May 8th. There maybe items onsite that haven't been invoced to us yet. | | |
| | Building Permit | 462.01 | 462.01T |
| | Dump Fees | 645.15 | 645.15T |
| | Materials & Rental Equipment | 14,690.56 | 14,690.56T |
| | Sales Tax TUMWATER | 9.40% | 3,508.34 |

| Total | $40,831.06 |
|-------|-----------|

EXHIBIT D

J. A. Morris Construction LLC

# Invoice

PO Box 12645
Olympia, WA 98508

| Date | Invoice # |
|---|---|
| 8/18/2020 | 1249 |

| Bill To |
|---|
| RW Johnson Mottman Condo<br>Owners Associatin<br>Attn: Derek Bryan<br>2620 R.W. Johnson Blvd<br>Tumwater, WA 98512 |

| P.O. No. | Terms | Project |
|---|---|---|
| | Due on receipt | 20-008 |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | RE: ADDRESS ROT AND REPLACEMENT OF SIDING. | | |
| 249 | Man hours From May 9th - August 14th | 60.00 | 14,940.00T |
| | Items below are received and invoiced to JA Morris from May 9th- August 14th. There maybe items onsite that haven't been invoced to us yet. | | |
| | Dump Fees | 277.15 | 277.15T |
| | Materials & Rental Equipment | 9,206.88 | 9,206.88T |
| | Sales Tax TUMWATER | 9.40% | 2,295.86 |

| | **Total** | $26,719.89 |
|---|---|---|

EXHIBIT E



John D. Cadagan
d: 206.805.3158
e: jcadagan@gordontilden.com

September 17, 2020

**Via Email:  Julius.Lester@us.qbe.com**

Julius Lester
Senior Claims Representative
QBE Americas, Inc. (QBEAI)
P.O. Box 975
Sun Prairie, WI  53590

Re:     **Claim number:          744216N**
        **Loss date:               March 1, 2017**
        **Policy number:          CFB1164992**
        **Effective:               August 17, 2016 – August 17, 2017**
        **Insured name:          RW JOHNSON MOTTMAN PLAZA**
        **Insurance company:   General Casualty Company of Wisconsin**

Dear Mr. Lester:

We represent your insured, R.W. Johnson Mottman Plaza ("RW Johnson").  We write in response to your April 6, 2020 letter denying coverage for the above-referenced loss.  QBE's denial is contrary to the facts, the policy language, and clear Washington law.  We request that QBE promptly reverse its denial and pay this claim.

QBE's denial is not merely incorrect; it is unreasonable and misrepresents the policy provisions and coverages afforded by the relevant policies.  QBE, thus, has acted in bad faith and has violated Washington's Consumer Protection Act and Insurance Fair Conduct Act in several respects.  In addition to its obligation to pay the covered loss, approximately $68,000, QBE is exposed to liability for treble damages.  Regardless of whether QBE's denial ultimately is held to have been in bad faith and in violation of the CPA and IFCA, QBE will be liable for RW Johnson's attorneys' fees under Washington's *Olympic Steamship* rule.

## I. FACTS OF LOSS

The insured property is a collection of buildings located at and around 2620 R.W. Johnson Blvd., Tumwater, WA.  In March 2020, RW Johnson notified you of damage to the siding of one of the insured buildings.  The subject insured building was constructed in 2008.

QBE retained EFI Global to inspect the loss.  EFI Global found the damage was "consistent with prolonged moisture exposure."  EFI Global also observed that in one area of the building, "flashing tape had been installed over the side and bottom window flanges.  Flashing installed over the bottom flange would facilitate for moisture to intrude the building envelope."  With this observation, EFI Global concluded the damage was from "moisture intrusion," which "was caused by a flashing construction deficiency at the window openings."

Julius Lester
September 17, 2020
Page 2


You summarized the results of EFI Global's investigation as follows:

> The Engineers [sic] inspection revealed moisture intrusion around the second-floor exterior windows on the south elevation.  The Engineer observed long term deterioration and decay beneath the exterior cladding and underlayment around the windows that has now compromised sections of the wood framing with rot.  The aforementioned damages and source of the water intrusion is a direct result of improper construction and installation, in conjunction with flashing deficiencies around the windows of the building.

At this time, we neither agree with nor reject QBE's investigator's conclusions or QBE's summary of the same.

RW Johnson hired J.A. Morris to investigate and repair the damage to the building's siding.  J.A. Morris estimates it will cost $67,550.95 to repair the resulting damage from the water intrusion and rot.  RW Johnson has already received invoices of $40,831.06 and $26,719.89 for repairs that are currently underway.  See Tabs A and B.

## II. QBE'S COVERAGE DENIAL

On April 6, QBE denied coverage.  QBE relied upon the following policy provisions quoted from the 2016-17 policy:

SECTION I PROPERTY

A.      Coverage

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.      Covered Property

> Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered.

\* \* \*

3.      Covered Causes Of Loss

> Risks of direct physical loss unless the loss is:

a.      Excluded in Paragraph B. Exclusions in Section I; or

Julius Lester
September 17, 2020
Page 3

      b.      Limited in Paragraph 4. Limitations in Section I.

  4.    Limitations

      a.      We will not pay for loss of or damage to:

* * *

      (5)  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (a)  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (b)  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

B.    Exclusions

  1.  We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. b. Limited in Paragraph 4. Limitations in Section I.[1]

  2.  We will not pay for loss or damage caused by or resulting from any of the following:

      l.      Other Types Of Loss

      (1)  Wear and tear;

      (2)  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

      (3)  Smog;

---

[1] It should be noted, this term was replaced by endorsement.  As such, QBE has mis-quoted its own policy in a denial letter to its insured.  This is yet another violation of WAC 284-30-330(1), and a *per se* violation of Washington's Insurance Fair Conduct Act and Consumer Protection Act.  *Industrial Indemnity Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990) ("a single violation of WAC 284-30-330 does constitute a per se unfair trade practice under the CPA"), ("A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1)").

Julius Lester
September 17, 2020
Page 4

    (4)  Settling, cracking, shrinking or expansion;

3.  We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c.  But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

*  *  *

c.  Negligent Work

Faulty, inadequate or defective:

    (1)  Planning, zoning, development, surveying, siting;

    (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3)  Materials used in repair, construction, renovation or remodeling; or

    (4)  Maintenance; of part or all of any property on or off the described premises.

Your April 6 letter did not explain how any of the above policy language applies to the conclusions drawn by QBE's investigator.  Rather, the entirety of QBE's "coverage position" is a single sentence, summarily concluding:  "there is no coverage for the damages associated with the improper construction, long term decay and deterioration of the building materials and framing."

### III.  ANALYSIS

QBE's coverage denial is incorrect, inadequate, and unreasonable under Washington law.

### A.  The "Long Term" Damage Implicates Policies from at Least 2015–2020

EFI Global concluded the loss was a result of "a construction deficiency that dates back to when the structure's windows were installed."  The windows were installed when the building was constructed in 2008.  Thus, the loss has been ongoing for several years, as is further confirmed by the photographs, see Tab C, and QBE's own characterization of the loss as a "long term" problem.  This means more than just the 2016–17 policy is implicated.

QBE's reliance on only the 2016–2017 policy to deny coverage misrepresented the available coverage.  This misrepresentation violated Washington's Consumer Protection Act and Insurance Fair Conduct Act.  See RCW 19.86.010 et seq.; WAC 284-30-330(1), (3), (4), (6), (13); WAC 284-30-350; RCW 48.30.015, et seq.  As such, RW Johnson is entitled to treble damages and attorneys' fees paid by QBE.  RCW 48.30.015(3) (providing attorneys' fees for IFCA violations); RCW 48.30.015(2) (authorizing an award of "three times the actual damages"

Julius Lester
September 17, 2020
Page 5

for IFCA violations); *Tim Ryan Const., Inc. v. Burlington Ins. Co.*, 2012 WL 6567586 at *8 (W.D. Wash. 2012) (awarding the same); *see also* RCW 19.86.090 (authorizing an award for unfair business practices to include "actual damages," "costs," "reasonable attorney's fee," and up to "three times the actual damages sustained" up to $25,000 for each violation).

The quoted provisions in QBE's denial, and the provisions' functional equivalents in the ISO form, appear in each of the Businessowners policies issued by QBE from 2015–2020. Thus, each policy in effect over at least the last five years provides coverage as described below.

**B.      The Damage Is Covered Under the Ensuing Loss Provision of the Negligent Work Exclusion**

QBE's denial states the loss is a "direct result of improper construction and installation"—in other words, "negligent work." QBE's policies generally exclude "negligent work." However, QBE ignores that the "Negligent Work" exclusion contains an ensuing-loss exception. That exception mandates coverage here.

"[A] resulting or ensuing loss clause operates to carve out an exception to the policy exclusion." *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wn.2d 501, 514, 276 P.3d 300 (2012); *accord Sunwood Condominium Ass'n. v. Travelers Cas. Ins. Co. of America*, 2017 WL 5499809 at *3-4 (W.D. Wash. 2017) (holding an ensuing loss provision "covers an otherwise excluded loss if it is proximately caused by concurrent excluded and covered perils."). "[T]he dispositive question in analyzing ensuing loss clauses is whether the loss that ensues from the excluded event is covered or excluded." *Vision One*, 174 Wn.2d at 516. In other words, "if an excluded peril (e.g. inadequate construction) brings about a covered peril (e.g. rain intrusion, repeated water seepage, or water damage), any resulting damage is covered." *Sunwood*, 2017 WL 5499809 at *4 (emphasis omitted).

The ensuing loss exception, as QBE quoted in its denial, provides: "if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." The "Negligent Work" exclusion is "Paragraph c" referenced in the ensuring loss exception. "Moisture intrusion" is a Covered Cause of Loss because it is not excluded or limited. *See* "Covered Cause of Loss" defined in Section I.A.3 of the policies; *see also Vision One*, 174 Wn.2d at 513-14 (distinguishing all-risk coverage from named-peril coverage and explaining that all-risk policies cover all perils not expressly excluded or limited); *see also Sunbreaker Condominium Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 377-79, 901 P.2d 1079 (1995) (rejecting insurer's attempt to characterize all damages under a single excluded peril and instead holding coverage exists for a condominium association's loss from water intrusion and rot).

Here, QBE's engineers concluded the damage was caused by "a flashing construction deficiency at the window openings," which resulted in the "moisture intrusion." Applying their conclusion to the ensuing loss exception of the negligent work exclusion: "if an excluded cause of loss [such as "a flashing construction deficiency"] results in a Covered Cause of Loss [such as "moisture intrusion"], we will pay for the loss or damage caused by that Covered Cause of Loss." Thus, the damage caused by the moisture intrusion is covered. QBE's outright denial is incorrect.

Julius Lester
September 17, 2020
Page 6

The foregoing coverage analysis is not complicated; nor is it novel. Indeed, review of the cases cited show these very issues have been settled in favor of coverage for years. *Vision One*, 174 Wn.2d 501; *Sunbreaker*, 79 Wn. App. 386; *Sunwood*, 2017 WL 5499809.

RW Johnson is entitled to coverage for moisture intrusion damage. Coverage cannot be reasonably disputed. The coverage includes rip and tear damages. *Sunwood*, 2017 WL 5499809 at *4 ("if an excluded peril (*e.g.* inadequate construction) brings about a covered peril (*e.g.* rain intrusion, repeated water seepage, or water damage), any resulting damage is covered.") (emphasis added); *accord Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127 (2002); *Mutual of Enumclaw Ins. Co. v. T&G Const., Inc.*, 165 Wn.2d 255, 199 P.3d 376 (2008). The estimated total cost to complete the repairs is **$67,550.95**. See Tab D.

## C.    The Denial Letter Failed to Provide A Reasonable Explanation

The total absence of any reasonable explanation of the policy in relation to the facts and applicable law in QBE's denial violates WAC 284-30-330(13). WAC 284-30-330(13) provides: "Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

As noted above, the entirety of the "explanation" was a single sentence lacking any application of policy language to the actual conclusions drawn by EFI Global. Indeed, such a cursory denial left RW Johnson to hire its own attorney to try to explain the basis for QBE's denial.

This summary denial exposes QBE to extracontractual liability, as it constitutes bad faith and violates both the Consumer Protection Act and Insurance Fair Conduct Act. RCW 19.86.010 *et seq.*; RCW 48.30.015; *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 764, 58 P.3d 276 (2002) ("Based on the violation of the Consumer Protection Act, WAC 284-30-330(13), … we affirm the finding of bad faith."); *Industrial Indemnity Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990) ("an insurer's denial of coverage, without reasonable justification, constitutes bad faith"). As explained further below, QBE's bad faith denial will cost QBE more than $200,000 in just extracontractual damages.

## D.    QBE's Liability for its Bad Faith Conduct Is Significant, but RW Johnson Demands Payment Only for the Loss Sustained

RW Johnson is entitled to extracontractual damages for QBE's bad faith denial. The fact is, QBE misrepresented the effect of its policy provisions. This is bad faith and actionable in Washington under the Consumer Protection Act and Insurance Fair Conduct Act. RCW 19.86.010 *et seq.*; RCW 48.03.015 *et seq.*; WAC 284-30-330; WAC 284-30-350.

QBE's violation of the Unfair Claims Settlement Practices Act (Chapter 284-30 WAC) has severe consequences. A single violation is a *per se* violation of the Washington Consumer Protection Act, RCW 19.86.010, *et seq. See Kallevig*, 114 Wn.2d at 923 ("a single violation of WAC 284-30-330 does constitute a per se unfair trade practice under the CPA"); *see also Leingang v. Pierce Co. Medical Bureau*, 131 Wn.2d 133, 930 P.2d 288 (1997). Serial violations of the Unfair Claims Settlement Practices regulations are prima facie evidence of bad faith. *Barry v. USAA*, 98 Wn. App. 199, 206-07, 989 P.2d 1172 (1999).

Julius Lester
September 17, 2020
Page 7

Further, where an insurer withholds the benefits of the insurance contract, which QBE has clearly done in this case, the policyholder has a remedy under the Insurance Fair Conduct Act. RCW 48.30.015. QBE's violations of WAC 284-30-330 and -350 are *per se* violations of IFCA. *Kallevig*, 114 Wn.2d at 923 ("A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1)"). This exposes QBE to, at a minimum, "three times the actual damages" (RCW 48.30.015(2)) and an "award of reasonable attorneys' fees and actual and statutory litigation costs" (RCW 48.30.015(3)). With the actual damages estimated to be $67,550.95, **QBE's exposure exceeds $200,000**—and that amount only represents the exposure for a single violation of IFCA and does not include the mounting attorneys' fees.

Regardless of the instance(s) of QBE's bad faith, RW Johnson is entitled to reimbursement of its attorneys' fees and costs. Washington law demands insurers pay the attorneys' fees and costs incurred by their insureds to obtain the benefits of their insurance contract. *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991); *see also McGreevy v. Oregon Mutual Ins. Co.*, 128 Wn.2d 26, 39-40, 904 P.2d 731 (1995) ("when an insurer unsuccessfully contests coverage, it has placed its interests above the insured"; "*Olympic Steamship* remedies this inequity by requiring that the insured be made whole."). To date, RW Johnson's attorneys' fees total just over $5,000.

Despite being entitled to significant extracontractual damages, RW Johnson will not demand those damages if QBE simply acknowledges and fulfills its coverage obligations for this loss by committing to pay for the costs associated with this claim. Those are the repair costs, currently estimated to be $67,550.95, and the attorneys' fees incurred to date, rounded down to $5,000.

This letter is being transmitted to the Washington Insurance Commissioner and constitutes the 20-Day Notice required under the Insurance Fair Conduct Act. RCW 48.30.015(8). If QBE does not confirm coverage of this loss within 20 days, RW Johnson will be authorized to file suit and pursue the covered losses and the full extracontractual damages to which it is entitled.

## IV. CONCLUSION

Coverage is clear under the ensuing loss exception to the negligent work exclusion QBE relied upon for its denial. QBE's coverage denial declined to acknowledge all relevant insurance and it ignored basic insurance contract interpretation principles and settled Washington law. It was cursory and improper. It violated Washington's Consumer Protection Act and Insurance Fair Conduct Act.

Based on the foregoing, we request QBE reconsider its denial of RW Johnson's tender, confirm coverage, and pay the attorneys' fees incurred. We look forward to hearing from you within the next 20 days and avoiding needless litigation.

Sincerely,

John D. Cadagan

JDC/ch
Enclosures



**OFFICE of the**
**INSURANCE**
**COMMISSIONER**
WASHINGTON STATE

# INSURANCE FAIR CONDUCT ACT (IFCA)
# COVER SHEET

## Complete and attach this cover sheet to your submission to the
## Office of Insurance Commissioner (OIC)

| Attn: | Submitted by: |
|---|---|
| | Name:_____ John D. Cadagan, WSBA #47996 _____ |
| Office of the Insurance Commissioner | Law Office: Gordon Tilden Thomas & Cordell LLP |
| Insurance Fair Conduct Act Claim Notification | Address:____ 600 University Street, Suite 2915 ____ |
| Office Support Unit | _____ Seattle, WA  98101 _____ |
| P.O. Box 40255 | Phone:____ (206) 467-6477 ____ |
| Olympia, WA 98504-0255 | Email:____ jcadagan@gordontilden.com ____ |
| | Date:_____ September 17, 2020 _____ |

**RCW 48.30.015(8)(a) –** Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner. Notice may be provided by regular mail, registered mail, or certified mail with return receipt requested. Proof of notice by mail may be made in the same manner as prescribed by court rule or statute for proof of service by mail. The insurer and insurance commissioner are deemed to have received notice three business days after the notice is mailed.

**Insurance Company:**___ QBE North Americas, Inc.; General Casualty Company of Wisconsin ___

**First Party Claimant:**___ R.W. Johnson Mottman Plaza ___

**Line of Insurance:**_____ Commercial Insurance Policy; Business Owners Insurance ___

**Basis for claim:**        ☒ **RCW 48.30.015 (1)**        ☒ **RCW 48.30.015 (5), (a) through (f)**

*A cover sheet is not required however, without a cover sheet or clear identification of a notice under IFCA, it is possible your notice will not be recognized and recorded as such. Additionally, you may submit your written notice of the basis for the case of action, but any additional supporting documents submitted to OIC are not required and will not be retained. All information provided to the OIC becomes subject to the Public Records Act. Please do not include any personal or confidential information such as medical records/information, social security numbers, banking information, driver's license information, etc.*

EXHIBIT F

| | |
|---|---|
| **From:** | Kikki Barnes |
| **To:** | John D. Cadagan |
| **Subject:** | RE: WA IFCA Notice: RW Johnson Mottman Plaza Claim 744216N |
| **Date:** | Wednesday, October 7, 2020 4:45:11 PM |
| **Attachments:** | image001.png |
| | Microsoft Word - WA IFCA RW Johnson Mottman Plaza Claim 744216N..pdf |

RE:  WA IFCA  RW Johnson Mottman Plaza
Claim: 744216N
Insured:  RW Johnson Mottman Plaza

Good evening Mr. Cadagan,

Please find attached response to your complaint dated September 17, 2020.

Let me know if you have any questions.

RE:  General Casualty Company of Wisconsin

**Kikki L. Barnes**
Claims Supervisor, Property Claims
CTO| North America
+1 972 398 6374

Website      LinkedIn        Twitter



------------------ IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or telephone. You should also delete this email and destroy any hard copies produced.
*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received this message in error, please return it to the sender and delete this original from your system.*



One QBE Way, Sun Prairie, WI 53596
Phone: 608.837.4440 ● Toll Free: 800.362.5448
qbe.com/us

October 7, 2020]

John D. Cadagan
GordonTilden Thomas & Cordell LLP
600 University Street, Suite 2915
Seattle, WA  98101
jcadagan@gordontilden.com

Re:   Your file number:        WA IFCA  RW Johnson Mottman Plaza
      Complainant:             RW Johnson Mottman Plaza
      Claim number:            744216N
      Loss date:               March 1, 2017
      Policy number:           CFB1164992
      Insured name:            RW Johnson Mottman Plaza
      Insurance company:       General Casualty Company of Wisconsin
      NAIC number:             24414

Dear  Mr. Cadaganr,

We are writing on behalf of General Casualty Company of Wisconsin ("we", "us", "our"), a member
company of QBE North America, which issued Policy No. CFB1164992 to RW Johnson Mottman Plaza for
annually reinstating periods starting August 17, 2013 through August 17, 2017 (the "Policies").  The
purpose of this letter is to respond your September 17, 2017 20-Day notice ("IFCA Notice") by RW
Johnson Mottman Plaza (the "Insured") pursuant to the Washington Insurance Fair Conduct (IFAC), RCW
§ 48.30.015 *et seq.* regarding the claim it submitted for damage in the amount of approximately $68,000
from moisture intrusion (the "Claim") under the Policies.  General Casualty's response is timely because it
is issued on October 7, 2020.

In considering the IFCA Notice, we have reviewed the Policies and the Claim information available to us.
We value our customers and appreciate their business. We will do our very best to address the issues and
concerns raised in your letter.  Kindly refer to the Policies for their complete terms and conditions.  For
purposes of this coverage position, the relevant terms of the 2016-2917 policy term are attached hereto as
Exhibit 1 for convenient review.  To the extent that any of the quoted policy terms or provisions herein
differ from the language contained in the Policies, the Policies control.  No other insurance policies were
considered.  If you assert a right to coverage under another policy issued by us or any other QBE North
America member company, please submit notice pursuant to the notice provisions contained in that policy.

It is our understanding from the IFCA Notice that it is the Insured's position that coverage is available
under Policies.  It is our further understanding that the Insured takes the position that at the very least,
coverage is available under the 2017 policy under the ensuing loss exception to the negligent work
exclusion.

As a threshold issue, General Casualty disputes that it has unreasonably delayed or
denied the Insured's Claim under the facts and policy terms.  We have concluded that the
efficient proximate cause of the loss is negligent work/construction defect (an excluded
peril) as opined by General Casualty's expert, which allowed continuous and repeated

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

water exposure (excluded peril), which in turn led to decay/rot (an excluded peril). Absent is an unreasonable denial of coverage or payment of benefits, there is no IFCA claim.

As set forth below, although coverage does not appear to be afforded by the Policies, General Casualty nonetheless agrees to participate in a further investigation of the Claim to assess whether coverage, if any, may be afforded. Your IFCA complaint did not specifically identify a covered cause of loss nor describe the ensuing loss that you believe is excepted under the negligent work exclusion. Our investigation of these claims is being conducted under a full reservation of rights.

### The Claim

The following provides a brief summary of the information provided to us to date. If you believe that relevant information is misstated or omitted, please advise the undersigned.

The Claim was filed for water intrusion from an unknown source on the east elevation of the building. The Claim was reported on March 24, 2020, with a reported date of loss of March 1, 2017. Our desk adjuster reached out to Sans Gilmore, point of contact for this Claim and was advised that the 3rd story office building on the east elevation on the second floor was experiencing water coming through the window 3 years ago. The Desk adjuster was also advised that the owner of the building, had sent contractors out to fix the problem over an undefined period of time. Eduardo Avelar, with EFI Global was assigned to conduct an investigation and confirm the origin and cause of loss of the reported moisture intrusion along the south elevation. The inspection was conducted on March 31, 2020 with Sans Gilmore and J.A. Morris Construction LLC, the insured's contractor present. The inspection concluded that the cause of the water intrusion, was due to improper installation of windows and flashing deficiency at the window openings when the building was constructed in 2008. This deficiency over time has resulted in wood decay and rusted fasteners.

### THE POLICIES

Please see Exhibit 1.

### Coverage Position and Response to the IFCA Notice

As stated above, the information received prior to the IFCA Letter, we determined that there is no coverage for the loss submitted by the Insured because the efficient proximate cause of damage is negligent work/construction defect which allowed the continuous and repeated intrusion of water, causing decay/rot. Our letter of April 6, 2020 states that there is coverage for improper construction, long term decay and deterioration of the building materials and interior water damage. As such it is our position that there is no IFCA violation unless there is an unreasonable denial of benefits. It is our position, that QBE acted promptly, in good faith and with due regard for the insured's interests in its investigation, evaluation, handling, and coverage determination of the claim.

However, under a full reservation of rights, we agree to re-open the claim and investigate the claim for coverage based on the information provided in the IFCA Notice, including the position that the Claim is possibly a continuous loss that goes back to the construction of the insured location in 2008. We ask that you provide us with information related to prior carriers going back to 2008 and ask that you put any other carriers on notice for this claim and reserve the right to assert that some or all of the damage did not occur during our policy period.

As for the damages claimed, you have submitted additional invoices for the claimed $68,000 in damages that have no itemized detail of the work conducted. Please provide us with any further detail, any estimates/invoices for these repairs. We also request that you provide us with any and all reports, documents, invoices for the repairs that were completed prior to providing us with notice of this Claim. Including but not limited to the repairs that were completed in 2017. We reserve our right to assert that the Insured failed to provide General Casualty with timely notice of the Claim.

Our coverage position is based on the information presently available to it. Neither this letter nor General Casualty's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policies or any other policies issued by General Casualty or any other QBE North America company. We expressly reserve all of its rights under the Policies, at law, and in equity, including, but not

limited to, the right to assert additional defenses to any claims for coverage and to modify its coverage position if subsequent information indicates that such action is warranted.

Should you have any additional information that you feel would either cause us to review our position or would assist us in our investigation, we ask that you advise us as soon as possible.

If you have any other insurance policies that may respond to this claim, you should notify that carrier immediately.

*If you have questions or concerns about the actions of your insurance company or agent, or would like information on your rights to file an appeal, contact the Washington state Office of the Insurance Commissioner's consumer protection hotline at 1 -800 -562 -6900 or visit www.insurance.wa.gov. The insurance commissioner protects and educates insurance consumers, advances the public interest, and provides fair and efficient regulation of the insurance industry." (274-30-770)*

It is extremely important to us that our customers be completely satisfied with our claim service.  If you have any questions after reading this letter, please contact the undersigned so that we can fully respond to any additional concerns.

Sincerely,

*Kikki L. Barnes*

Kikki L. Barnes
Claims Supervisor
QBE Americas, Inc. (QBEAI)

Direct:   (972) 398-6374
Fax:      1.866.251.5389
E-mail:   kikki.barnes@us.qbe.com

Enclosures     N/A
cc:            N/A

# EXHIBIT G



GORDON
TILDEN
THOMAS
CORDELL

GTTC

John D. Cadagan
d: 206.805.3158
e: jcadagan@gordontilden.com

January 19, 2021

**VIA ELECTRONIC MAIL [kikki.barnes@us.qbe.com]**
**AND U.S. MAIL**

Kikki L. Barnes
Claims Supervisor
QBE Americas, Inc.
One QBE Way
Sun Prairie, WI 53596

Re:   **Insured:**      **RW Johnson Mottman Plaza**
      **Claim No.:**    **744216N**
      **Date of Loss:** **March 1, 2017**
      **Policy No.:**   **CFB1164992**
      **Insurer:**      **General Casualty Company of Wisconsin**
      **NAIC No.:**     **24414**

Dear Ms. Barnes:

In your October 7, 2020 letter, you stated QBE "agree[d] to re-open the claim and investigate the claim for coverage based on the information provided in the IFCA Notice, including the position that the Claim is possibly a continuous loss that goes back to the construction of the insured location in 2008." (page 2). It has been more than three months; the 20-day notice period under IFCA has long since passed. We left you a voicemail on December 31, 2020 requesting an update; our call was never returned.

We now write to ask for an update on your investigation. What exactly has QBE done since October 7, 2020 and when will QBE update its coverage position? We trust you will not reiterate the request made in your October 7 letter for an "itemized detail of the work conducted," as we provided that information in the documents attached at Tab A, Tab B, and Tab D to our letter of September 17, 2020.

We note that your October 7 letter stated QBE had already determined there was coverage. "Our letter of April 6, 2020 states that *there is coverage* for improper construction, long term decay and deterioration of the building materials and interior water damage. As such it is our position that there is no IFCA violation *unless there is an unreasonable denial of benefits*." (page 2, emphasis added). Despite apparently acknowledging coverage, QBE has not provided *any* benefits under the policy. As such, by your own admission, this is an IFCA violation.

Further, we reiterate that this is not the only extracontractual claim RW Johnson has against QBE. Here are some others:

Kikki L. Barnes
January 19, 2021
Page 2

1) Despite the loss being a "long term" problem, as even QBE characterizes it, QBE misrepresented the coverage available by relying solely on the 2016-2017 policy. This misrepresentation violated Washington's Consumer Protection Act and Insurance Fair Conduct Act. *See* RCW 19.86.010 *et seq.*; WAC 284-30-330(1), (3), (4), (6), (13); WAC 284-30-350; RCW 48.30.015, *et seq.* As such, RW Johnson is entitled to treble damages and attorneys' fees paid by QBE. RCW 48.30.015(3) (providing attorneys' fees for IFCA violations); RCW 48.30.015(2) (authorizing an award of "three times the actual damages" for IFCA violations); *Tim Ryan Const., Inc. v. Burlington Ins. Co.*, 2012 WL 6567586 at *8 (W.D. Wash. 2012) (awarding the same); *see also* RCW 19.86.090 (authorizing an award for unfair business practices to include "actual damages," "costs," "reasonable attorney's fee," and up to "three times the actual damages sustained" up to $25,000 for each violation). Your October 7 letter compounds this violation by again only considering the "2016-2917 [sic] policy" and stating "[n]o other insurance policies were considered," despite our September 17 letter expressly alerting QBE to the fact that multiple policies are triggered.

2) In QBE's April 6, 2020 letter, QBE mis-quoted its policy by quoting an exclusion as applicable when that exclusion was not actually part of the policy but rather had been replaced by an endorsement. *See* Page 3, Footnote 1, of our September 17, 2020 letter. As we explained before, by doing so QBE violated WAC 284-30-330(1), and thereby violated Washington's Insurance Fair Conduct Act and Consumer Protection Act. *Industrial Indemnity Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990) ("a single violation of WAC 284-30-330 does constitute a per se unfair trade practice under the CPA"), ("A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1)").

3) While we now understand from your October 7 letter that QBE's April 6 letter intended to confirm "**there is coverage**," the confusing and conclusory explanation provided in the April 6 letter forced your insured to have to hire its own attorney. As we have explained, this constitutes bad faith and violates both the Consumer Protection Act and Insurance Fair Conduct Act. RCW 19.86.010 *et seq.*; RCW 48.30.015; *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 764, 58 P.3d 276 (2002) ("Based on the violation of the Consumer Protection Act, WAC 284-30-330(13), … we affirm the finding of bad faith."). Moreover, QBE must now reimburse RW Johnson for the attorneys' fees and costs RW Johnson has incurred. Washington law demands insurers pay the attorneys' fees and costs incurred by their insureds to obtain the benefits of their insurance contract. *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991).

4) Similarly, as your October 7 letter acknowledges, QBE's withholding of the insurance benefits, which it apparently acknowledges are warranted because "there is coverage," is an IFCA violation. RCW 48.30.015; WAC 284-30-330 and -350; *Kallevig*, 114 Wn.2d at 923 ("A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1)"). This exposes QBE to, at a minimum, "three times the actual damages" (RCW 48.30.015(2)) and an "award of reasonable attorneys' fees and actual and statutory litigation costs" (RCW 48.30.015(3)). QBE's withholding of the insurance benefits it acknowledges are owed also entitles RW Johnson to recover its attorneys' fees and costs from QBE. *Olympic Steamship*, 117 Wn.2d at 53.

Kikki L. Barnes
January 19, 2021
Page 3

In short, more than three months ago QBE "re-open[ed] the claim" and supposedly began to "investigate."  There has been no communication from QBE since.  Coverage is clear and apparently acknowledged by QBE.  QBE's continued refusal to provide the coverage benefits to its insured, and QBE's failure to communicate with its insured, constitute clear violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act, and entitle RW Johnson to its attorney fees and costs under *Olympic Steamship*.

We request an update on your investigation and payment of the claim.  We look forward to your prompt response.

Sincerely,

John D. Cadagan

JDC/ch